# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JUSTIN CRISP, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 5:17-867 |
| NOAH BALLARD, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The Fourth Amendment guarantees the right to be free from excessive force during a seizure. In this case, a drunk driver repeatedly disrupted a police officer's attempts to handcuff him, ignored successive commands to stop, and wrestled with the officer in the road until the officer struck him in the head multiple times, causing serious cranial injuries. The question is whether the officer's response clearly and unreasonably exceeded settled constitutional limits.

I

Just after midnight on Christmas Eve, San Antonio Police Department Officer Noah Ballard was patrolling the Stone Oak neighborhood looking for drunk drivers. It was a slow night in a quiet area, so he parked near a three-way intersection to check for motorists who failed to obey the all-way stopsigns. Incident Video 00:00-00:20, ECF No. 50-2; Ballard Statement 1, ECF No. 50-1; DWI/Traffic Case R. 1, ECF No. 52-1; Ballard Dep. Tr. 27:15-16, ECF No. 52-6.

After a few minutes, Officer Ballard saw Justin Crisp approach the intersection on a motorcycle. Before reaching the stopsign, Crisp lost control and fell off the bike, injuring his leg. Officer Ballard turned on his lights and pulled into the street to block traffic. And as he exited his

car to help Crisp, he smelled alcohol. Incident Video 00:20-00:47; Ballard Statement 1-2; Crisp Dep. Tr. 99:1-15, ECF No. 50-3; DWI/Traffic Case R. 2.; Ballard Dep. Tr. 27:18-25.

Noticing Crisp's glassy and bloodshot eyes, Officer Ballard asked if Crisp wanted an ambulance; Crisp declined. Over slurred speech, Crisp repeatedly denied drinking, and explained he fell when another car unexpectedly pulled out in front of him. But Officer Ballard had not seen any other cars around before Crisp crashed. Incident Video 00:47-06:20; Ballard Statement 1-2; Crisp Dep. Tr. 99:16–100:14; DWI/Traffic Case R. 2, 4; Ballard Dep. Tr. 33:17-22.

Suspecting Crisp lied about his alcohol consumption, Officer Ballard administered two horizontal gaze nystagmus tests, a standard field sobriety exam. When Crisp failed both, Officer Ballard arrested him for driving while intoxicated (DWI) and started to handcuff him. Incident Video 06:20-10:17; Ballard Statement 2; Crisp. Dep. Tr. 101:1–103:10; DWI/Traffic Case R. 3, 5; Ballard Dep. Tr. 33:23–34:5.

Crisp wrenched his right hand away and spun to face Officer Ballard. Crisp now claims he involuntarily reacted to a sharp pain when Officer Ballard touched his thumb, which was hurt during the crash. Yet Officer Ballard feared Crisp was turning violent. So he quickly sidestepped Crisp, wrapped his arm around Crisp's shoulders, and ordered him—three times—to stop. Crisp continued to turn around. Officer Ballard radioed for help, and again told Crisp to stop. Incident Video 10:17-10:29; Ballard Statement 2; Crisp. Dep. Tr. 103:12-23; DWI/Traffic Case R. 3; Ballard Dep. Tr. 31:11-17, 34:6-18, 45:8-12.

But Crisp twisted down, shaking off Officer Ballard's arm and grabbing Officer Ballard's shirt. Crisp says this was a natural instinct to avoid falling. Officer Ballard thought Crisp was

dragging him to the ground, and he tried to break free. Incident Video 10:29-10:33; Ballard Statement 3; DWI/Traffic Case R. 3; Ballard Dep. Tr. 34:6-18.

The two spilled into the street, Officer Ballard on top. Crisp was struck in the head three times before he waved his arms, apologized, and asked Officer Ballard to stop. With Crisp pinned to the ground, Officer Ballard instructed him to stop resisting and to roll over with his hands behind his back. Incident Video 10:33-11:03; Ballard Statement 3; Crisp. Dep. Tr. 106:6-11; DWI/Traffic Case R. 3.

But Crisp kept squirming as Officer Ballard tried to handcuff him. Crisp claims he was trying to sit up to make it easier for Officer Ballard. Officer Ballard thought Crisp was trying to buck the restraint and elbow him in the face. The two grappled as Officer Ballard told Crisp to stop, and then struck him twice more. Crisp called out in pain; a subsequent medical exam showed a mild traumatic brain injury and a fractured right orbital rim. Officer Ballard finally managed to get the handcuffs on. Incident Video 11:03-11:27; Ballard Statement 3; Crisp. Dep. Tr. 106:15–107:25; DWI/Traffic Case R. 3.

II

Crisp sued Officer Ballard under 42 U.S.C. § 1983, asserting First, Fourth, Fifth, and Eighth Amendment claims. Officer Ballard now moves to dismiss Crisp's First, Fifth, and Eighth Amendment claims. He further moves for summary judgment on Crisp's Fourth Amendment Excessive Force claim. Crisp contests only summary judgment.

But before considering summary judgment, the Court must decide if qualified immunity protects Officer Ballard from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985). Police officers frequently confront "tense, uncertain, and rapidly evolving" circumstances requiring

"split-second judgments . . . about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). So qualified immunity gives officers "breathing room to make reasonable but mistaken judgments," shielding them from suit unless they flagrantly violate a "clearly established" right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735-43 (2011); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (noting qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law"). Put simply, to deny qualified immunity, "existing precedent must have placed" the unconstitutionality of officer's conduct "beyond debate." *al-Kidd*, 563 U.S. at 741.

"The first step in assessing the constitutionality of [an officer]'s actions is to determine the relevant facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version." *Id.* But where—as here—the record contains an uncontroverted video depicting the incident, the Court must "view[] the facts in the light depicted by the videotape."[1] *Id.* at 381. And the Court assesses those facts from "the perspective of a reasonable officer on the scene," not "the 20/20 vision of hindsight" from "the peace of a judge's chambers." *Graham*, 490 U.S. at 396.

The second step determines the clearly established law when the incident occurred. An officer's arresting authority "necessarily carries with it the right to use some degree of physical coercion." *Graham*, 490 U.S. at 296. But the Fourth Amendment guarantees citizens "secur[ity]

---

[1] Especially in this case, since the video exposes factual embellishments in Crisp's account. The video lays bare Crisp's claim that "barely a second elapsed between Officer Ballard's attempt to handcuff Crisp and . . . punching Crisp in the face with a closed fist." Br. at 13. In reality, it was nearly fifteen seconds, and included Officer Ballard giving (at least) five stop commands. Nor did Officer Huddleston administer the lateral vascular neck restraint Crisp says he did. When the incident began, the video shows Officer Ballard's arm wrapped across the top of Crisp's chest; to the extent Officer Ballard's arm reached Crisp's neck, it was because Crisp continued to twist around. The video further belies Crisp's claim he only resisted passively. Instead, Crisp jerked his arm back to prevent Officer Ballard from handcuffing him, ignored Officer Ballard's verbal orders, and wrestled with Officer Ballard after falling into the street.

4

in their persons . . . against unreasonable . . . seizures." By 2015, the Supreme Court settled that the line dividing reasonable force from unreasonable force is—ironically—unsettled: "[t]he test used to determine whether a use of force was reasonable under the Fourth Amendment 'is not capable of precise definition or mechanical application.'" *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Graham*, 490 U.S. at 396). Rather, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (identifying six nonexclusive considerations bearing on the reasonableness of force: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting").

Fifth Circuit cases help flesh-out this standard. For instance, the Fifth Circuit approves swift and severe force against even passive defendants who ignore an officer's orders. In *Carroll v. Ellington*, for instance, a unanimous panel granted qualified immunity to an officer who fired two Taser probes at an unarmed, seated plaintiff who refused the officer's commands to lay on the floor. 800 F.3d 154, 174-76 (5th Cir. 2015).

Multiple cases establish officers may tackle and strike suspects of serious crimes who actively resist arrest, however slightly. In *Poole v. City of Shreveport*, a DWI suspect initially complied with two officers' commands. 691 F.3d 624, 625-26 (5th Cir. 2012). But when one officer began to restrain him, the suspect backed away saying, "What a minute. What are you

doing?" *Id.* The court granted qualified immunity after the officers pinned him against his car, repeatedly Tasered him, and—faced with continuing resistance—flipped him to the ground and handcuffed him, dislocating his elbow and inflicting a permanent disability in the process. *Id.* at 629. In *Hogan v. Cunningham*, when a man suspected of disobeying a child custody order closed his door on two officers, the court granted two officers qualified immunity for ramming it down and tackling the suspect, snapping two of his ribs. 722 F.3d 725, 734 (5th Cir. 2013).

But the Fifth Circuit denies qualified immunity when an officer uses substantial force despite no meaningful active resistance, or where the officer lacked reasonable suspicion of a crime. In *Trammell*, a divided panel denied qualified immunity for three officers who tackled a misdemeanor suspect three seconds after asking him to place his hands behind his back and before he showed any signs "indicating an attempt to escape." 868 F.3d at 340-42. That plaintiff's only arguable resistance was saying he was "not going to jail," and moving his arm a few inches after an officer grabbed it, without pulling the officer forward or causing the officer to lose contact. *Id.* Similarly, in *Bush v. Strain*, the court denied qualified immunity to an officer who "forcefully slammed [the plaintiff]'s face into a vehicle when [the plaintiff] was [already] handcuffed and subdued" following her arrest for simple battery. 513 F.3d 492, 501 (5th Cir. 2008). And in *Deville v. Marcantel*, the court denied qualified immunity for officers who pulled a woman over for driving ten miles-per-hour over the speed limit, broke her window, drug her from her car, and pinned her against the patrol car after she refused to leave her young granddaughter alone in the backseat until her husband arrived. 567 F.3d 156, 167-68 (5th Cir. 2009). Relatedly, in *Goodson v. City of Corpus Christi*, the court denied qualified immunity to two officers who tackled and broke the shoulder of a suspect who was not fleeing and who they lacked reasonable suspicion to stop. 202 F.3d 730, 740 (5th Cir. 2000).

# III

Officer Ballard is entitled to qualified immunity because he neither infringed Crisp's Fourth Amendment rights nor flouted clearly established law. Given the Fourth Amendment's "objective reasonableness" standard, *Graham*, 490 U.S. at 398, little daylight shines between whether Officer Ballard violated Crisp's right to be free from excessive force and whether that right was clearly established under these circumstances. But Officer Ballard merits qualified immunity on either front.

Officer Ballard did not violate Crisp's Fourth Amendment right since the *Graham* factors justified substantial force to subdue Crisp. Officer Ballard arrested Crisp for driving while intoxicated, a serious crime. *See also Birchfield v. North Dakota*, 136 S. Ct. 2160, 2178 (2016). Moreover, the video supports Officer Ballard's reasonable conclusion that Crisp posed a threat to his safety: Crisp enjoyed a substantial height advantage, broke loose from Officer Ballard's restraints, and heaved Officer Ballard into the street with him. And Crisp's actions constitute active resistance under the very definition Crisp provides (at pp. 11-12 of his brief). Crisp did not "play[] dead" or "go 'dead weight.'" Nor did he merely "walk[]" or "pull[]" away—he yanked his arm back as Officer Ballard tried to handcuff him, quickly stepped towards Officer Ballard, and ignored Officer Ballard's repeated commands to stop moving. Crisp's substantial actions warranted Officer Ballard's substantial response.

Moreover, Officer Ballard's response did not violate clearly established law. Prior Fifth Circuit precedent allowed force against noncompliant defendants. Here, Crisp ignored Ballard's commands to stop moving. The Fifth Circuit further permitted police to tackle and strike suspects of serious crimes who actively resist arrest. Crisp—like the suspect in *Poole*—ripped his arm away from Officer Ballard and ignored Officer Ballard's orders, continually straining

7

against Officer Ballard's restraints. The logic supporting qualified immunity for *Poole*'s two police officers applies with even greater force to Officer Ballard, who was the lone responder and who relied solely on physical force. Finally, the video clearly depicts Crisp's active resistance, and Crisp does not contest Officer Ballard's probable cause for the DWI arrest. Officer Ballard's use of force thus falls within the Fifth Circuit's settled constitutional boundaries.

## IV

Because Officer Ballard's response violated neither Crisp's right to be free from excessive force nor clearly established law, qualified immunity shields him from Crisp's Fourth Amendment claim. And since Crisp does not contest dismissal of his remaining claims, the Court will grant Officer Ballard's motion to dismiss. Accordingly, the Court will dismiss Officer Ballard's pending discovery motion as moot. An accompanying order follows.

Date: December 22, 2018

Royce C. Lamberth
United States District Judge